UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WINDOW WORLD INT'L, LLC, and WINDOW WORLD, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> JILL O'TOOLE, JAMES T. LOMAX, WINDOW WORLD OF ST. LOUIS, INC., and WINDOW WORLD OF SPRINGFIELD-PEORIA, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) Case No. 4:19-cv-2363-SEP ) ) ) ) ) ) ) ) |

**MEMORANDUM AND ORDER**

    This matter is before the Court on the Motion to Dismiss Pursuant to Rule 12(b)(6) and Motion to Dismiss or, in the Alternative, Stay Pursuant to *Colorado River* Abstention filed by Defendants Jill O'Toole, James T. Lomax, Window World of St. Louis, Inc., and Window World of Springfield-Peoria, Inc., (collectively, "Defendants"). Docs. [26] and [28]. The motions are fully briefed and ready for disposition.

**I.    Motion to Dismiss Standard**

    The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. When considering a 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes them in the non-movant's favor. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

    Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

1

will not do." 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Specifically, to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly*, 550 U.S. at 556.

## II.     Facts and Background[1]

This case results from the breakdown of the relationship between a franchisor and its franchisees. Window World International, LLC ("WWI") owns trademarks which it has licensed to Window World, Inc. ("Window World"). Doc. [19] ¶ 13. Window World markets and distributes exterior home remodeling products and is permitted to implement WWI's trademarks to do so. *Id.* ¶¶ 12-13.

To distribute its products, Window World has licensed approximately 200 independently owned and operated franchises in the United States. *Id.* ¶ 13. Defendants Window World of St. Louis, Inc., and Window World of Springfield-Peoria, Inc., hold licenses to operate as franchises. *Id.* ¶¶ 7-8. Defendant Lomax is a co-owner of both franchises. *Id.* ¶ 6.

On January 2, 2015, Lomax and the franchises, together with more than two dozen other parties, Doc. [42] at 5, filed suit against Plaintiffs in state court in North Carolina. *Window World of St. Louis, Inc. v. Window World, Inc.*, 15 CVS 2 (N.C. Business Ct. filed Jan. 2, 2015). That suit raises claims for breach of contract and fraud, among others. Doc. [33] at 12. Defendants here (who are plaintiffs in North Carolina) are also seeking reformation to enforce an unlimited right to use Plaintiffs' marks. The North Carolina case is still pending, but discovery has closed.

In April 2019, Lomax prepared and sent a letter purporting to collect information from past customers of the franchises and specifically those who may have purchased their products from "previous ownership teams." Docs. [19] ¶ 18; [19-3]. The letter includes WWI

---

[1] The facts contained herein are taken from the allegations set out in Plaintiff's Amended Complaint and an attached exhibit. Doc. [19], [19-3]. *See Miller v. Redwood Toxicology Lab,y Inc.,* 688 F.3d 928, 931 & n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)) (holding that courts may consider "exhibits attached to the complaint whose authenticity is unquestioned"). The Court assumes they are true for the purpose of this Memorandum and Order. *See Iqbal*, 556 U.S. at 678-79; *Neitzke*, 490 U.S. at 326–27.

2

trademarks. Doc. [19] ¶ 18. It requested that customers call to confirm "proper contact and product information." Doc. [19-3]. The letter also included a warning: "**If you want to retain the warranty on your products, you need to call us by April 12, 2019.**" *Id.* (emphasis in original). Lastly, Lomax provided a phone number for customers to contact Defendant O'Toole, whose name is typed in the signature of the letter. *Id.*

In fact, warranties for Window World products would not expire if customers failed to contact the Defendants. *Id.* ¶ 18 n.1. Plaintiffs' Amended Complaint contains seven counts arising from Defendants misrepresentations. For purposes of this Order, those seven counts are consolidated into three issues: false advertising, trademark infringement, and trademark dilution.

## III. Discussion

Defendants filed two motions to dismiss and/or stay. The first is a Motion to Dismiss Pursuant to Rule 12(b)(6). Doc. [26]. Defendants seek to dismiss all claims and also, on separate grounds, to dismiss all claims against O'Toole. The second is a Motion to Dismiss or, in the Alternative, Stay Pursuant to *Colorado River* Abstention. Doc. [28]. The Court will address each of Defendant's grounds for dismissal or stay.

### A. False Advertising Under the Lanham Act

Count I of the Amended Complaint is for false advertising under the Lanham Act. Doc. [19] ¶¶ 32-38; 15 U.S.C. § 1125(a)(1)(B). Defendants argue that Plaintiffs lack statutory standing and provide insufficient factual support for a false advertising claim.

#### i. Statutory Standing

To have standing under the Lanham Act, a plaintiff must show 1) that its interests fall within the zone of interests protected by the statute, and 2) that the plaintiff's injury was proximately caused by the defendant's violations of the statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-33 (2014).

To fall within the zone of interest, "a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131-32. Defendants argue that Plaintiff cannot have standing because Plaintiff has not alleged the loss of sales or revenue. Doc. [27] at 13. But the Supreme Court has made clear that diversion of sales "is not the only type of injury cognizable under § 1125(a)." *Lexmark*, 572 U.S. at 138. For example, a plaintiff's injury might "flow[] directly from the audience's belief in the disparaging statements"—such as statements that "equat[e] [a plaintiff's product] with an inferior product." *Id.* (citations omitted).

3

Plaintiffs allege that Defendants presented false information suggesting that the product warranty would expire unless the customer acted. Doc. [19] ¶ 33. Thus, Defendants allegedly presented Window World's products, and specifically their associated warranties, as inferior to Window World's actual products. Plaintiffs allege that customers believed the letter and called O'Toole, motivated by the belief that their warranty, apparently less durable than promised, was about to expire. *Id.* ¶ 23. Thus, Plaintiffs' injury, as alleged, falls within the zone of interests protected by the Lanham Act.

Plaintiffs' remaining hurdle for standing is proximate cause. Proximate cause tests "whether the harm alleged has a sufficiently close connection to the conduct that statute prohibits." *Lexmark*, 572 U.S. at 133. Plaintiffs properly plead that Defendants' statements in the letter caused customers to believe that they had been misled about their product warranties, which constitutes damage to the reputation of Window World products. Consequently, Plaintiffs have statutory standing to bring claims arising for false advertising.

ii. *Factual Support*

To survive a motion to dismiss, the Amended Complaint must plead factual support for each of the five elements of a false advertising claim:

1. A false statement of fact by the defendant in a commercial advertisement about its own or another's product;
2. The statement actually deceived or has the tendency to deceive a substantial segment of its audience;
3. The deception is material, in that it is likely to influence the purchasing decision;
4. The defendant caused its false statement to enter interstate commerce; and
5. The plaintiff has been or is likely to be injured as a result of the false statement.

*Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1182-83 (8th Cir. 2011); *see also Lexmark*, 572 U.S. at 138-40 (expanding the set of injuries protected by the Lanham Act beyond the scope of *Buetow*).

Plaintiffs allege that the statement, "If you want to retain the warranty on your products, you need to call us by April 12, 2019," is deceptive. Docs. [19-3], [19] ¶ 24. Defendants characterize that allegation as "dubious at best." Doc. [27] at 12. But to survive a motion to dismiss, the allegations need to state a claim plausibly, not indubitably. *Iqbal*, 556 U.S. at 678.

4

Plaintiffs allege four ways in which the letter deceived its audience. Doc. [19] ¶ 24. They further allege that customers called O'Toole in response to the letter, Doc. [19] ¶ 23, which, they contend, demonstrates that customers were actually confused, Doc. [36] at 3. The Court finds that Plaintiffs have sufficiently alleged that Defendants' statement is deceptive.

Defendants also contend that Plaintiffs fail to plead facts supporting the existence of a *material* deception, however, Doc. [27] at 12, and with that, the Court agrees. Even if the disputed statement is deceptive, Plaintiffs have not pleaded facts suggesting that it was "likely to influence [a] purchasing decision." *Buetow*, 650 F.3d at 1182. Plaintiffs' only allegation directly addressing the "materiality" of the alleged deception is: "These statements are material to the Warranty Letter's audience in that they are intended and are likely to influence the purchasing decisions of the Warranty Letter's audience and induce the audience to purchase products from Defendants." Doc. [19] ¶ 35. Without more, the Amended Complaint does not satisfy *Twombly*, 550 U.S. at 555.

The Complaint does not allege that the statement did—nor does it allege any fact suggesting that it was "likely to"—influence any customer's *future* purchasing decision. The letter itself does not purport to provide any information about Window World products or warranties to past or prospective customers. Doc [19-3] Although the Complaint asserts, "[u]pon information and belief," that Defendant O'Toole "received telephone calls from recipients of the Warranty Letter shortly after it was sent," Doc. [19] ¶ 23, it does not assert—even upon information and belief—that any of those calls suggested that the letter did, or would likely, affect future purchases. Thus, Plaintiffs plead no facts to support an inference that the statements, even if deceptive, were material to a purchasing decision.

The bare allegation that the statement satisfies the legal standard for materiality is insufficient. *Twombly*, 550 U.S. at 555 (holding that Rule 8 requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Although the Court draws reasonable inferences in Plaintiffs' favor, Plaintiff must allege facts to support such inferences. *See Jones v. Douglas Cnty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). Plaintiffs cannot circumvent *Twombly* by proposing unsupported inferences. *See Zink v. Lombardi*, 783 F.3d 1089, 1102 (8th Cir. 2015) (holding that plaintiffs failed to include facts to permit a reasonable inference).

Plaintiffs' Amended Complaint does not "contain sufficient factual matter" which, if true, provides a plausible basis to believe that any purchasing decision was, or was likely to be, affected by the allegedly deceptive statement. *Iqbal*, 556 U.S. at 678. Therefore, the false advertising claim must be dismissed.[2]

### B. Trademark Infringement Claims

Plaintiffs brings four counts for trademark infringement and unfair competition. Counts II and III of the Amended Complaint bring claims for trademark infringement and unfair competition, respectively, under the federal Lanham Act. 15 U.S.C. § 1114. Counts VI and VII bring the state equivalents, which arise under common law. For commercial plaintiffs, these four claims share the same essential elements. *Hain BluePrint, Inc., v. Blueprint Coffee, LLC.*, 4:16-cv-1758-SNLJ, 2018 WL 6246984, at *4 (E.D. Mo. Nov. 29, 2018) (citing *Sturgis Motorcycle Rally, Inc., v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 322 (8th Cir. 2018)); *see also Buetow*, 650 F.3d 1178 (noting pendent state law claims under analogous Minnesota statutes are coextensive with Lanham Act claims only for commercial plaintiffs). The parties agree. Docs. [27] at 5, [36] at 4-5. Because the four claims stand or fall together, the Court will analyze them together.

To succeed on their trademark infringement claims, Plaintiffs must show that they have "a valid, protectible mark" and that there is a "likelihood of confusion" between their mark and Defendants'. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009). Defendants do not argue that Plaintiffs' marks are unprotected, so the Court will turn to the likelihood of confusion.

Whether a likelihood of confusion is probable depends on six factors.[3] Defendants argue that the factors are unnecessary in this case because Plaintiffs allege confusion of the wrong

---

[2] Plaintiffs argue that materiality cannot be decided on a motion to dismiss, but they are mistaken. Plaintiffs' only authority for the claim is *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 466 F.3d 630 (8th Cir. 2006). But *Mid-State* and the case on which it relies, *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175 (8th Cir. 1998), do not analyze materiality. When no facts are alleged to support a false advertising claim, dismissal is appropriate. *See Avante Int'l Tech. Corp. v. Premier Election Sols., Inc.*, 4:06cv0978 TCM, 2008 WL 686324 (E.D. Mo. March 10, 2008). The fact that Plaintiffs would have the opportunity to prove a properly-pleaded claim at trial does not relieve them of their duty to plead it properly in the first place.

[3]  There are six factors to consider when determining whether a likelihood of confusion exists:  "(1) the strength of the trademark; (2) the similarity between the plaintiff's and defendant's marks; (3) the competitive proximity of the parties' products; (4) the alleged infringer's intent to confuse the public; (5)

nature.  Doc. [27] at 5-6.  Defendants take the position that whenever a party is authorized to use a mark to sell that mark holder's products, confusion is impossible.  *Id.* at 6 ("There could be no source confusion here because Plaintiffs allege Defendants were licensed and therefore authorized to use the Window World name and logo in the Warranty Letter.").  Defendants provide no authoritative source for this principle.

Plaintiffs respond with an Eighth Circuit case that found a violation of the Lanham Act by a licensee that exceeded the scope of its license.  Doc. [36] at 6 (citing *Masters v. UHS of Del., Inc.*, 631 F.3d 464 (8th Cir. 2018) (affirming the judgment for a Lanham Act violation where the defendant exceeded the scope of the contract)).  Defendants distinguish *Masters* on the facts but fail to address the legal principle for which Plaintiffs cite the case:  that confusion *can* be created by a licensee.  The Court is compelled by *Masters* to reject Defendants' argument that a licensee, as a matter of law, can never cause source confusion that supports a trademark infringement claim.  Defendants may later prove that, under the six-factor test, the Warranty Letter created no confusion, but they did not make that argument here.

Defendants' position also requires a construction of Section 43 of the Lanham Act that is too narrow.  Section 43 of the Lanham Act imposes liability on:

> [a]ny person who, . . . in connection with any goods . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or . . . false or misleading representation of fact, which is likely to cause confusion, . . . as to the . . . approval of his or her . . . commercial activities by another person[.]

15 U.S.C. § 1125(a)(1)(A).  Contacting customers about the steps necessary to retain a warranty qualifies, at a minimum, as a commercial activity.  Sending a letter using another entity's protected marks urging customers to return communication citing a false prospect of losing warranty coverage satisfies the remaining components of the statute.

Plaintiffs have alleged facts that, if true, plausibly state a claim for trademark infringement.  For that reason, the trademark infringement claims will not be dismissed.[4]

---

evidence of any actual confusion; and (6) the degree of care reasonably expected of the plaintiff's potential customers."  *B&B Hardware*, 569 F.3d at 389 (citations omitted).

[4] Defendants also argue in their reply brief that the Court should dismiss the unfair competition claims because the parties' interests are aligned.  The Court declines to address an argument raised for the first time in a reply brief.  *See Fish v. United States*, 748 F. App'x 91, 92 n.2 (8th Cir. 2019) (explaining that a reply brief is "too late" to properly raise a new argument).

7

### C. Trademark Dilution Claims

Plaintiffs bring claims for trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c), and Missouri's antidilution law, Mo. Rev. Stat. § 417.061. "Dilution is separate and distinct from trademark infringement." *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 832 (8th Cir. 1999). "Normally, the [dilution] doctrine applies where 'similar marks are used on dissimilar goods.'" *Id.* at 833 (citation omitted); *see also Viacom Inc. v. Ingram Enters., Inc.*, 141 F.3d 886 (8th Cir. 1998) ("The Act creates a remedy against non-competing trademark uses such as DuPont shoes, Buick aspirin, and Kodak pianos.") (quotation omitted). The protected mark is weakened, and thus its effect in the marketplace is diluted, when "similar marks are used on dissimilar goods." *Luigino's*, 170 F.3d at 833 (citation omitted).

Defendants argue that dilution is not possible here because the Defendants' letter used Plaintiffs' marks in connection with "the very goods and products" that Plaintiffs licensed Defendants to sell: Plaintiffs' windows. Doc. [27] at 10. Plaintiffs respond that Defendants' misrepresentations about the warranties undermine the trademarks' "ability to identify Plaintiffs' products and the superior warranties that accompany them." Doc. [36] at 13. Plaintiffs' argument rests on a misunderstanding of how antidilution protections operate.

Antidilution laws serve as a backstop when a party markets a product using a mark similar to an already-famous mark, where the products or services "are so unlike that there is no likelihood of confusion of source or connection." 4 McCarthy on Trademarks and Unfair Competition § 24:74 (5th ed.). Dilution does not encompass every action that weakens the strength of a senior mark. *Id.* § 24:72. Rather, "the legal concept of dilution presumes that defendant's use of the mark does *not* cause a likelihood of confusion over source, sponsorship, affiliation or connection." *Id.*

Plaintiffs indicate that the dilution at issue is by tarnishment. Doc. [36] at 11-12. "Courts have frequently enjoined the 'tarnishment' of a mark through association with *unsavory* goods, persons or services." *Anheuser-Busch, Inc. v. Balducci Publ'ns.*, 28 F.3d 769, 777 (8th Cir. 1994) (emphasis added) (collecting cases). *Anheuser-Busch* and the cases it cites show that, in order to support dilution by tarnishment, the use of marks must cause an association of different products that would embarrass the senior mark holder. *See Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 771 n.4 (8th Cir. 2010) (Colloton, J., concurring) ("I also concur in the judgment affirming the dismissal of Sensient's claim under the Missouri anti-

dilution statute . . . because this is a dispute between competitors who sell similar goods."); *Viacom Inc.*, 141 F.3d at 892 n.10 ("We reject the contention that, as a matter of law, the sale of fireworks tarnishes a business that rents movies.") (emphasis omitted).

Other circuits have adopted the "different products" standard explicitly: "Tarnishment . . . creates consumer aversion to the famous brand" because "the public will associate the lack of quality or lack of prestige in the defendant's goods *with the plaintiff's unrelated goods*." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 167 (4th Cir. 2012) (emphasis added) (citing *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489 (5th Cir. 2004)).

The crux of Plaintiffs' allegations and arguments is that Defendants are using Plaintiffs' marks to sell Plaintiffs' products but advertising less durable warranties. For dilution to have occurred as a result of the Warranty Letter, its recipients would need to have understood that Defendants are not affiliated with Plaintiffs. Plaintiffs' own allegations assert the opposite. Doc. [19] ¶¶ 6-8, 27. Further, these allegations do not state a claim for dilution by tarnishment because Plaintiffs' windows and Defendants' windows are the same products. For these reasons, the claim for dilution must be dismissed.

### D. Dismissal of O'Toole

Plaintiffs allege in the Amended Complaint that "Lomax prepared and transmitted" the warranty letter. Doc. [19] ¶ 18. "Lomax sought to obtain information" about previous purchasers and develop sales leads. *Id.* ¶ 19. "Lomax placed O'Toole's name on the Warranty Letter," and "Lomax deliberately chose" not to use his franchises' letterheads. *Id.* ¶ 20-22. Yet Plaintiffs insist that O'Toole must remain in the case because her name and phone number are on the warranty letter. Doc. [36] at 15.

Plaintiffs' theory is that O'Toole breached an independent duty to avoid making false misrepresentations to Window World's customers when she failed to correct Lomax's misleading statements. Doc. [19] ¶ 22. Plaintiffs offer no argument or authority to support imposing vicarious liability on a subordinate employee. The Amended Complaint provides no allegations to plausibly suggest that Lomax was acting as O'Toole's agent, so vicarious liability is inappropriate. Plaintiffs allege no source of an affirmative duty and no authority to support their assertion that a managerial employee has a duty to remedy a superior's actions.

9

Because the Amended Complaint does not state a plausible claim for relief against Defendant O'Toole, the Court will grant the motion to dismiss all counts against her.

### E. Colorado River Abstention

Defendants also move for dismissal or stay under the *Colorado River* abstention doctrine, which authorizes federal courts to abstain from lawsuits that relate to state proceedings under certain narrow circumstances. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Here, Defendants urge the Court to abstain in deference to ongoing litigation in North Carolina state court involving these same parties and others. *Window World of St. Louis, Inc. v. Window World, Inc.*, 15 CVS 2 (N.C. Business Ct. filed Jan. 2, 2015).

There is a strong presumption against abstention, even when a related state case is ongoing: "[T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). Courts have a "'virtually unflagging obligation . . . to exercise the jurisdiction given them, even when there is a pending state court action involving the same subject matter.'" *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009) (quoting *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Cir. 2006)). Only when the state and federal proceedings are "parallel" and "exceptional circumstances" exist may a federal court abstain and divest itself of jurisdiction. *Id.* (quoting *Colo. River*, 424 U.S. at 817-18).

When applying traditional abstention principles to actions for damages, district courts may stay the federal action. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996). "Unlike the outright dismissal or remand of a federal suit . . . an order merely staying the action 'does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it.'" *Id.* at 721 (quoting *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959)). For the reasons set out below, the Court will stay this action.

#### 1. Parallel Proceedings

The Eighth Circuit applies a rigorous standard for the threshold determination of whether state and federal proceedings are "parallel" for the purposes of *Colorado River*. *See United States v. Rice*, 605 F.3d 473, 476 (8th Cir. 2010). For cases to be parallel, "a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims

presented in the federal court." *Id.* at 476 (quoting *Fru-Con*, 574 F.3d at 535). "When any doubt exists as to the parallel nature of concurrent state and federal proceedings, the district court cannot utilize *Colorado River* to refuse its jurisdiction." *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013) (citing *Fru-Con*, 574 F.3d at 535).

To determine whether "there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court," *Rice*, 605 F.3d at 476 (quoting *Fru-Con*, 574 F.3d at 535), the Court must compare "the 'sources of law, required evidentiary showings, measures of damages, and treatment on appeal' for each claim." *Cottrell*, 737 F.3d at 1245 (quoting *Fru-Con*, 574 F.3d at 536). The defendants in *Cottrell* argued that a stay was appropriate because a determination by the state court of a threshold issue of state law could fully dispose of the federal proceeding. *Id.* at 1247. There, both the state and federal courts would have applied the same state-law-based standard to a threshold issue, so the state court could have fully disposed of the federal claim. *Id.* Thus, the defendants argued, the cases were parallel. *Id.* The Eighth Circuit found that argument "persuasive" but ultimately rejected it because the state court could not directly rule on claims that arose under exclusively federal jurisdiction. *Id.* Further, it was possible for the state court to evade the threshold issue, so that abstention would result in "the practical elimination" of claims exclusively under federal jurisdiction. *Id.*

Defendants make an analogous argument that a threshold issue to be decided in the North Carolina suit could fully dispose of this case: whether the "scope of the parties' licensing relationship," Doc. [29] at 10, gives Defendants the right to use Plaintiffs' marks "without limitation," Doc [42] at 3-4. Plaintiffs allege that the trademark infringement claims arise from Defendant exceeding the scope of its license. Doc. [36] at 8. If Defendants are successful in the North Carolina litigation, then all of Plaintiffs' claims—each alleging unauthorized use of or encroachment on protected marks—would necessarily fail. Because the Eighth Circuit has deemed that argument persuasive, and there are no countervailing considerations of exclusive federal jurisdiction to consider here, the Court finds that the federal and state actions are parallel for the purposes of *Colorado River* in this case.

**2. Exceptional Circumstances**

Even where federal and state cases are parallel in the relevant sense, "[a]bdication of the obligation to decide cases can be justified under [*Colorado River*] only in exceptional

11

circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colo. River*, 424 U.S. at 813 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)). The test for exceptional circumstances starts with six factors:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995) (quoting *U.S. Fid. & Guar. Co. v. Murphy Oil USA, Inc.*, 21 F.3d 259, 263 (8th Cir. 1994)). "These factors are not intended to be exhaustive." *Id.* Moreover, courts "do not apply these factors as a 'mechanical checklist,' but instead weigh these factors 'in a pragmatic, flexible manner with a view to the realities of the case at hand.'" *Spectra Commc'ns Grp., LLC v. City of Cameron*, 806 F.3d 1113, 1121 (8th Cir. 2015) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 21 (1983)).

a. *Jurisdiction over the res*

The first factor is irrelevant because there is no res at issue. *See id.*

b. *Inconvenience of the federal forum*

Plaintiffs note that the Eastern District of Missouri is not an inconvenient forum for this case, because the alleged misconduct occurred in Missouri and Illinois, and witnesses are located in the Greater St. Louis area. The Court agrees that those traditional factors favor the federal forum.

Defendants argue that the federal forum is less convenient than the state forum because Plaintiffs have "consistently taken the position in litigation with other Window World franchises that disputes . . . must be resolved in North Carolina." Docs. [29] at 11; [29-4]. Defendants offer no support for the proposition that Plaintiffs should be bound by forum-related arguments made in other cases. Moreover, in the example provided by Defendants, Plaintiffs' arguments were based on a forum selection clause. Defendants have not argued that a forum selection

12

clause dictates the proper forum for this case. Even if the Court liberally construes Defendants' claims as a claim about the parties' reasonable expectations of where claims would be litigated, that consideration would not overcome the other convenience factors. As a result, the Court finds that the second factor weighs against abstention.

    *c. Risk of piecemeal litigation*

  Whether maintaining separate actions will result in piecemeal litigation is "the predominant factor" affecting *Colorado River* abstention. *Mountain Pure*, 439 F.3d at 927 (citing *Moses H. Cone*, 460 U.S. at 16, 21). Courts consider whether separate actions could "cause unwarranted friction between state and federal courts, a result which is obviously undesirable." *Spectra*, 806 F.3d at 1121 (quoting *Emps. Ins. of Wausau v. Missouri Elec. Works, Ins.,* 23 F.3d 1372, 1375 (8th Cir. 1994)). Such friction results when "the federal and state courts could reach conflicting opinions on the same issues." *Id.* Because the state and federal courts both must determine the scope of the license agreement between the parties, this case poses substantial risk for conflicting opinions and concomitant friction between federal and state courts.

  Defendants also argue that friction between state and federal courts will result because Plaintiffs are using this case to circumvent adverse rulings, including sanctions, in the state court, and that this case is tantamount to discovery abuse. Doc. [29] at 12-13. Plaintiffs do not address that argument. Doc. [33] at 13-14. The Court finds these allegations and Plaintiffs' silence concerning. While such circumstances are not dispositive, the fact that the North Carolina court has already invested considerable time and resources in adjudicating discovery disputes between these parties and Plaintiffs now seek discovery relating to similar issues in this lawsuit, does heighten the Court's concern about potential friction between the two courts.

  Defendants lastly express concern that allowing this case to continue could result in "duplication of effort and waste of the parties' resources." Doc. [29] at 13. Duplicative litigation in state and federal fora is not a sufficient reason to abstain. *Colo. River*, 424 U.S. at 817-18 (explaining the "general principle is to avoid duplicative litigation" in wholly federal concurrent jurisdiction, but "the circumstances permitting [abstention from state-federal concurrent jurisdiction] . . . are considerably more limited"). Nevertheless, under the circumstances, the Court finds that allowing this case to proceed at this time would risk violating "traditional principles of equity, comity, and federalism" by allowing a party to seek in a federal

13

forum what it has been denied in the state forum. *Beavers v. Arkansas State Bd. of Dental Exam'rs*, 151 F.3d 838, 840 (8th Cir. 1998) (quoting *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1142 (8th Cir. 1990)).  Staying this action until the scope of Defendants' trademark license is determined in the North Carolina litigation would prevent intrusive federal interference in a state action.

Finally, the Eighth Circuit has adopted the policy of "favoring the most complete action." *Spectra*, 806 F.3d at 1122 (quoting *Federated Rural*, 48 F.3d at 298).  Because the North Carolina litigation involves additional parties seeking to resolve the same threshold issue, that case is the more complete action.

For all of these reasons, the third—and predominant—*Colorado River* factor weighs heavily in favor of abstention.

### d. Priority

The fourth factor favors the case with priority.  Priority is not a matter only of which case was filed first, but rather it accounts for the progress made in each case.  Plaintiffs correctly state that their choice of forum generally should not be disturbed.  Doc. [33] at 13 (quoting *Fru-Con*, 574 F.3d at 539).  However, in *Fru-Con*, the plaintiff's choice of forum determined this factor because the other consideration related to priority was neutral.  574 F.3d at 539.  Here, the related state case has progressed to the close of discovery, whereas discovery has not begun in this forum.  While discovery in this case would likely include matters not relevant to the North Carolina case, Defendants' rights to use Plaintiffs' marks will need to be established in both cases, and after five years of litigation, the North Carolina court is far better situated to resolve that issue expeditiously.  The Court believes that staying this action, rather than dismissing it, would give due consideration to Plaintiffs' choice of forum for any residual claims.  Accordingly, this factor weighs in favor of abstention.

### e. Presence of federal law issues

The penultimate factor is the "presence of federal-law issues." *Spectra*, 806 F.3d at 1122 (quoting *Moses H. Cone*, 460 U.S. at 26).  As to Plaintiffs' Lanham Act claims, this factor weighs against abstention.  However, the possibility of staying this lawsuit, rather than dismissing it, pending resolution of the trademark issue in the North Carolina suit should alleviate any concern about denying Plaintiffs a federal forum for their federal claims.

14

*f.   Adequacy of the state forum to protect the federal plaintiff's rights*

The sixth and final factor is whether the state forum is inadequate to protect the federal plaintiff's rights. Because of the Court's "virtually unflagging obligation" to exercise jurisdiction, Defendants bear the burden of showing that the factors weigh in favor of abstention. *Fru-Con*, 574 F.3d at 534 (quoting *Mountain Pure*, 439 F.3d at 926). Defendant has not convinced the Court that abstention poses *no* risk to Plaintiffs in this federal case. Defendants submit that "no indication is present that the North Carolina court is incapable of providing that relief." Doc. [29] at 14. They also cite a state statute pertaining to the North Carolina Business Court's subject matter jurisdiction to show that the state court is specialized to handle trademark and intellectual property disputes, but that statute references specifically state law claims. Although the North Carolina court appears adequate to determine the scope of the trademark license, Defendants have not resolved all doubt about the adequacy of the state forum to resolve Plaintiffs' Lanham Act claims. Accordingly, this factor weighs against abstention. But again, staying this lawsuit rather than dismissing it should mitigate concerns about adequacy of the state forum for adjudicating Plaintiffs' Lanham Act claims.

An inventory of the six *Colorado River* factors thus shows that the first (res) is irrelevant; the second (convenience) weighs against abstention; the third and fourth (piecemeal litigation and priority) weigh in favor of abstention, and the last two (presence of federal issues and the preservation of the federal plaintiff's rights) weigh against dismissal but not against a stay. The factor that the Eighth Circuit has described as "predominant"—i.e., the risk of piecemeal litigation—strongly favors abstention here, as do the principles of comity and judicial economy. And concerns about Plaintiffs' federal law claims should be alleviated by a decision to stay this lawsuit only until the central *state* issue—the scope of the trademark license—is decided in the North Carolina suit.

On balance, then, the Court finds that the *Colorado River* factors support a stay of this litigation until the threshold issue of the scope of the trademark license is determined by the North Carolina state court. At the conclusion of the North Carolina litigation, the parties may seek to lift the stay and pursue resolution on any outstanding matter.

**IV.   Conclusion**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. [26]) is **GRANTED** with respect to Counts I, IV, and V, **DENIED** with respect to Counts II, III, VI, and VII, and **GRANTED** with respect to Defendant O'Toole.

**IT IS FURTHER ORDERED** that Defendants' Motion for Colorado River Abstention (Doc. [28]) is **GRANTED**, and this litigation is **STAYED** pending determination of the scope of Defendants' license to use Plaintiffs' protected marks in *Window World of St. Louis, Inc. v. Window World, Inc.*, 15 CVS 2 (N.C. Business Ct. filed Jan. 2, 2015).

**IT IS FINALLY ORDERED** that any party may move to lift the stay after the North Carolina state court determines the scope of Defendants' license to use Plaintiffs' marks.

An appropriate Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 30th day of November, 2020.

*Sarah E. Pitlyk*
_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE